UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re Subpoena in _____ )<br>)<br>UNITED STATES OF AMERICA )<br>)<br>               Plaintiff, )<br>v. )<br>)<br>SMITHKLONEBEECHAM CORP d/b/a_____)<br>GLAXOSMITHKLINE, INC., )<br>)<br>               Defendants. )<br>_____) | Misc. No. 07-mc-0333 (RJL) |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO QUASH**

In its opposition to the motion to quash filed on behalf of David Voyles, a federal employee of the Smithsonian Institution, SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK") argues that sovereign immunity does not extend to Mr. Voyles to bar the noticed deposition because the testimony sought only pertains to Mr. Voyles' personal observations about the decedent, Mr. Collins, whom Mr. Voyles supervised. It is undisputed that the observations GSK seeks to elicit by this subpoena were made during Mr. Voyles' employment with the Smithsonian and, specifically, as part of his duties as Mr. Collins' supervisor. Therefore, the subpoena seeks to compel Mr. Voyles to give testimony about information that he acquired only by virtue of his official capacity as Mr. Collins' supervisor. In his Motion to Quash, Mr. Voyles cites case law that supports the proposition that subpoenas issued to federal employees seeking testimony about their official duties works against the sovereign and must be quashed. GSK does not cite a single case to support its proposition that supervisory duties are not official duties. Because GSK's subpoena issued to Mr. Voyles works against the Smithsonian, it should be quashed under the doctrine of sovereign immunity.


**ARGUMENT**

    A.    <u>Mr. Voyles' Interactions with Mr. Collins were Strictly Supervisory</u>

GSK argues that Mr. Voyles' Motion to Quash should be denied because the only testimony it seeks is about Mr. Voyles' personal observations, which do not implicate sovereign immunity. Def. Br. at 7. This argument is based on the faulty premise that Mr. Voyles made distinctions between personal and official observations about Mr. Collins. Moreover, GSK's contention is contradicted by Mr. Voyles who states that, as Mr. Collins' supervisor between 1994 and 1999, his only interactions with Mr. Collins were official. *See* Declaration of David L. Voyles, ¶¶3 & 4.

Mr. Voyles states categorically that Mr. Collins never discussed any personal matters with him. *Id*. at ¶4. Moreover, Mr. Voyles states that he is not qualified to give any medical and/or psychological opinions about Mr. Collins. *Id*. at 10. Regarding the *Markell* litigation brought against the Smithsonian and Messrs Voyles and Collins, amongst others, Mr. Voyles states that he has no knowledge of how the pending action affected Mr. Collins. *Id*. at ¶¶6-7. Mr. Voyles had little or no interaction with Mr. Collins from the end of his supervisory responsibilities over Mr. Collins in 1999 until his suicide in 2002. *Id*. at ¶8.

Based on Mr. Voyles' Declaration, it is indisputable that Mr. Voyles only interacted with Mr. Collins in his official supervisory capacity. The testimony GSK seeks to develop at deposition, Def. Br. at 9-10, on the grounds that it is personal is clearly not so.[1] Rather, those

---

[1] Mr. Voyles provided some background information to individuals who showed up unannounced at his home indicating that they were investigating Mr. Collins' suicide . Voyles Decl. at ¶9. However, Mr. Voyles cut short the discussion when he realized that the individuals were representatives of a "law firm." *Id*.

questions would elicit testimony about official matters such as Mr. Collins' interactions with co-workers, conflict with co-workers, including an altercation that almost became physical, and difficulties Mr. Voyles experienced supervising Mr. Collins. Because the testimony GSK seeks to obtain from the deposition pertains to Mr. Voyles' official duties and by extension the Smithsonian's official business, sovereign immunity should extend to Mr. Voyles to protect the information sought.

      B.    <u>Mr. Voyles' Position is Supported by Case Law</u>

GSK's response to Mr. Voyles' Motion to Quash is to attempt to distinguish the cases Mr. Voyles cited by suggesting that official acts have a personal component that is not protected by sovereign immunity. No case law supports GSK's position and it is not surprising that they have not cited any.

Whether a suit is against the sovereign depends on whether the result would expend itself upon the public treasury, domain or interfere with public administration. *Forman v. Small*, 271 F.3d 285, 295 (D.C. Cir. 2001). To be sure, the Smithsonian enjoys sovereign immunity. *Id*. The only other question is whether GSK's subpoena implicates any of the factors that would trigger immunity. Mr. Voyles contends that because the subpoena operates on information he obtained in his official capacity and is within the Smithsonian's control, the Institution's immunity should extend to him.

Mr. Voyles' position is supported by case law. In *Sharon Lease Oil, Co. v. Fed. Energy Reg. Comm'n*, defendant in a Texas State court action sought to subpoena a federal official to testify in support of its counterclaim. 691 F.Supp. 381, 382. As here, the subpoena in *Sharon Lease Oil*, sought to discover information under the Agency's control and information that the

3

federal employee obtained through his employment at the Agency. *Id*. at 383. Accordingly, the court quashed the subpoena because of its effect on public administration. *Id*. at 383-84. Here, the subpoena will compel Mr. Voyles to disclose official Smithsonian information and it should be quashed.

The *Sharon Lease Oil* court quashed the subpoena also because the defendant had not demonstrated a compelling need for this information. *Id*. at 384. Here, also, GSK has not demonstrated a compelling need for Mr. Voyles' testimony. Other than the assertion that Mr. Voyles' testimony is needed to show that Mr. Collins was the same person before and after he started taking Paxil, GSK has not shown that this information cannot be obtained from other sources. Because GSK has not demonstrated a compelling need for this testimony and has unsuccessfully distinguished *Sharon Lease Oil*, *supra*, the subpoena should be quashed.

## CONCLUSION

For the foregoing reasons, the subpoena should be quashed and the matter dismissed.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

/s/
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

/s/
KENNETH ADEBONOJO
Assistant United States Attorney

CHRISTINE NICHOLSON
Associate General Counsel
Smithsonian Institution
Washington, D.C. 20026

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing reply to GSK's opposition to Mr. Voyles' motion to quash was sent by mail:

Lauren Reeder, Esq.
King & Spalding
1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Atty. for Respondent

on this 10th day of October, 2007.

                                          /s/
                                 KENNETH ADEBONOJO
                                 Assistant United States Attorney
                                 Judiciary Center Building
                                 555 4th Street, N.W.,
                                 Washington, DC  20530
                                 (202) 514-7157
                                 kenneth.adebonojo@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re Subpoena in _____ )<br>)<br>UNITED STATES OF AMERICA )<br>)<br>         Plaintiff, )<br>v. )<br>)<br>SMITHKLONEBEECHAM CORP d/b/a_____ )<br>GLAXOSMITHKLINE, INC., )<br>)<br>         Defendants. )<br>_____) | Misc. No. 07-mc-0333 (RJL) |

**DECLARATION OF DAVID L. VOYLES**

    1. I am employed by the Smithsonian Institution as Associate Director of Finance, Office Facilities, Engineering, and Operations. I have held this position since October 2004. From January 2002 until October 2004, I was Associate Director for Administration for the Office of Protection Services, Smithsonian Institution. From January 1999 to January 2002, I was the Audits and Compliance Officer for the Office of Protection Services.

    2. From November 1993 to 1999, I served as Chief of the Security Services Division, Office of Protection Services, Smithsonian Institution.

    3. While serving in the latter position, I was the supervisor of Bobby Collins, an investigator, from approximately January 1994 through January 1999.

    4. During this period of time, I knew Mr. Collins only because of and in my official capacity as his supervisor. I had no contact with Mr. Collins other than work responsibilities. Mr. Collins never discussed any personal issues with me.

    5. I was not aware of any mental or physical health issues of Mr. Collins other than a bout of colitis in 1998.

6. I was named as a defendant in a case filed in federal district court by Eliott Markell in 1996, along with several other employees of the Office of Protection Services, including Mr. Collins.

7. I have no information about what, if any, impact this lawsuit had on Mr. Collins personally. Mr. Collins never discussed his reaction to the lawsuit with me.

8. The last time I spoke to Mr. Collins, other than possibly to say hello when passing, was in February or March 1999, to give a letter regarding a conduct issue. I do not recall what the issue was but it did not rise to the level of a disciplinary action.

9. In May 2007, two men came to my home in Germantown, Maryland. They did not call in advance or seek permission to come to my home. They indicated they were investigating the death of Bobby Collins. Approximately 15 minutes later, in response to my questions, they revealed that they worked for a law firm representing a drug company (they provided the name, but I do not recall it) that had been sued by the Collins family. At that point, I tried to end the conversation. Neither man was taking notes, and neither indicated that our conversation was being recorded in any way.

10. I am not a psychiatrist, psychologist, psychotherapist or any other kind of mental health care provider, and I have no professional or clinical training in those fields. I am not qualified to make a psychiatric or psychological diagnosis of any kind.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED, on October 10, 2007.

                                                _____/s/_____
                                                David L. Voyles